# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 69 | **DATE** | 2/26/2004 |
| **CASE TITLE** | BLAND vs. FIATALLIS NORTH AMERICA, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Plaintiff's motion for judgment is granted. Defendant's motion for partial summary judgment is denied. Enter Memorandum Opinion and Order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: DW

Date/time received in central Clerk's Office

date docketed: MAR 03 2004

Document Number: 77



LOU BLAND, EDWARD HODGMAN,
GERALDINE ROSATO, ERVIN SHORES,
and RICHARD HORCHER,

    Plaintiffs,

v.

FIATALLIS NORTH AMERICA, INC.,
CASE NEW HOLLAND INC., and CNH
HEALTH AND WELFARE PLAN,

    Defendants.

No. 02 C 0069
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Lou Bland, Edward Hodgman, Geraldine Rosato, Ervin Shores, and Richard Horcher are retirees of defendant Fiatallis North America, Inc., who retired prior to 1989, as well as their surviving spouses, and who have brought suit against Fiatallis, Case New Holland Inc. ("CNH"), and the CNH Health and Welfare Plan. The first claim for relief arises under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), and seeks "to enforce . . . rights under the terms of" five ERISA plans. 29 U.S.C. § 1132(a)(1)(B). Plaintiffs purport to bring this action on behalf of these sub-classes of Fiatallis retirees, and surviving spouses of Fiatallis retirees:

1.   (i) Former Fiatallis salaried employees who retired after January 1, 1977 and before January 1, 1978 and were covered at retirement under Fiatallis's "Benefits For Retired Salaried Employees" plan, and (ii) their surviving spouses.

2.   (i) Former Fiatallis salaried employees who retired after January 1, 1978 and before 1989, and were covered at retirement under Fiatallis's "Group Health Plan for Active Salaried Employees" plan, and (ii) their surviving spouses.

3. (i) Former hourly employees at Fiatallis's Deerfield, Illinois plant, who retired after January 1, 1978 and before 1989, and were covered at retirement under the "Health Benefits" Plan, and (ii) their surviving spouses.

4. (i) Former hourly employees at Fiatallis's Carol Stream, Illinois plant, who retired after January 1, 1978 and before 1989, and were covered at retirement under the "Benefits for Retired Hourly Employees" Plan, and (ii) their surviving spouses.

5. (i) Former hourly employees at Fiatallis's Springfield, Illinois plant, who retired after March 26, 1985 and before 1989, and were covered at retirement under the "Benefit Fact Sheet" issues on March 25, 1985 and April 1, 1985, and (ii) their surviving spouses.

This case is a reaction to defendant CNH's plan changes in February 2001, which increased retiree and surviving spouse medical and dental plan premiums, and reduced certain benefit plan coverage levels.

Plaintiffs allege that "the employee welfare benefit plans, and the benefits thereunder are vested under" ERISA and its implementing regulations. They allege that the plan documents "constitute an agreement by Fiatallis to provide vested group health care benefits to the plaintiff class under ERISA and the cases interpreting ERISA," and that they have "vested rights to the group health care benefit plans promised to them by Fiatallis through the plan documents presented to them by Fiatallis at and before their retirement." Plaintiffs allege further that defendants are obligated to continue the group medical plans under which plaintiffs retired "at the same premium cost and at substantially the same benefit levels" in effect at retirement.

The parties have now submitted cross-motions for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c), as to Plaintiffs' first claim for breach of an ERISA contract. Judgment on the pleadings under Rule 12(c) is appropriate after the parties have filed a complaint and answer if "it appears beyond doubt that the plaintiff cannot prove any facts that

2

would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993). While I should view the facts in the complaint in the light most favorable to the non-moving part, I am "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989). The pleadings in this case include not only plaintiffs' amended complaint, filed on August 13, 2003, and defendants' answer to the amended complaint, filed on September 22, 2003, but also the plan documents attached to the amended complaint. *See Warzon v. Drew*, 60 F.3d 1234, 1237 (7th Cir. 1995); Fed.R.Civ.P. 10(c).

Analysis

The Supreme Court recently reaffirmed its long-standing view that ERISA is not an entitlement statute:

> [N]othing in ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan. Rather, employers have large leeway to design disability and other welfare plans as they see fit. . . . The validity of a claim to benefits under an ERISA plan . . . is likely to turn in large part on the interpretation of terms in the plan at issue.

*Black & Decker Disability Plan v. Nord*, 123 S.Ct. 1965, 1971 (2003) (citations and quotation marks omitted). "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

As a general rule, ERISA distinguishes between pension plans and welfare plans. 29 U.S.C. § 1002(3). Welfare plans – the plans at issue here – include those that provide "medical, surgical or hospital care or benefits." 29 U.S.C. § 1002(1). While ERISA imposes minimum vesting standards for pensions plans, 29 U.S.C. § 1053, it specifically exempts welfare plans from the vesting requirements, 29 U.S.C. § 1051(1); *see Inter-Modal Rail Employees Ass'n v. Atchison Topeka & Santa Fe R.R. Co.*, 520 U.S. 510, 516 (1997). Therefore, ERISA welfare plans are alterable unilaterally by the employer, unless the right is waived (*i.e.*, unless vesting occurs). *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851 (4th Cir. 1994). If vesting is to occur in a welfare plan, the employer must so provide in "clear and express language" in the governing plan documents.[1] *Nasti v. World Book, Inc.*, No. 00 C 3880, 2002 U.S. Dist. LEXIS 2407, at *11-12 (N.D. Ill. Feb. 14, 2002). However, the plan documents need not include the word "vest," "vested," or "vesting" for vesting to occur. *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993). Plaintiffs who assert rights under ERISA to vested welfare benefits – such as the plaintiffs here – bear the burden of proving by a preponderance of the evidence that the employer had a clear and express intent to render the benefits forever unalterable. *Nasti v. World Book, Inc.*, 2002 U.S. Dist. LEXIS 2407, at *12-13. Therefore, the issue in these Rule 12(c)

---

[1] The requirement that lifetime benefits be unambiguously declared is a correct reading of legislation and congressional intent. It may also be good public policy since, for most employed persons, there are government programs that provide coverage for medical care. But I pause to note that it may not be good *corporate* policy even to use language that suggests (but does not promise) the possibility (but not the certainty) of clear lifetime benefits. If enough enterprises do this without providing lifetime benefits, business enterprises in general are likely to earn the same respect once accorded to the snake oil salesman who promised to cure baldness and cancer with the same medicine.

4

motions is whether each of the plans on which plaintiffs rely contain "clear and express" vesting language.

### The January 1977 "Benefits for Retired Salaried Employees" Plan and "Dental Plan for Retired Salaried Employees"

The claims of salaried employees who retired in calendar year 1977 are governed by the January 1977 "Benefits For Retired Salaried Employees" plan and "Dental Plan For Retired Salaried Employees." This salaried plan contained a section entitled "when coverage ends." It provided: "Your Basic and Major Medical coverage remains in effect so long as you or your surviving spouse are living." The salaried plan also contained a section entitled "when dental coverage ends." It provided: "Your Company-provided dental coverage remains in effect so long as you or your surviving spouse are living." These provisions did not bar post-retirement changes to the plan because they stated only that coverage remains in effect; they did not state that a particular benefit or benefit level remains in effect. These plans contained no "clear and express" vesting language that forever precluded any change to them.

### The January 1978 "Group Health Plan For Active Salaried Employees"

The January 1978 salaried plan contained a section entitled "benefits *can continue* at retirement." (emphasis added) That section provided: "When you retire the Basic Plan benefits *continue* to be paid for you by the Company. If you wish to continue the Major Medical, you continue to pay your share of the cost." (emphasis added) Under a section entitled "protection

5

for your spouse and dependents in the event of your death," the January 1978 salaried plan provided:

> If you should die while your spouse is covered by the plan, then your spouse and any eligible dependents (including sponsored dependents already covered) *can continue* the protection. Protection *will continue* until your spouse dies, remarries, or is covered by another employer's group plan.
>
> Your spouse will be required to make monthly payments for both Basic and Major Medical coverage.
>
> However, if you are retired or eligible to retire at the time of your death, your spouse will make contributions only for Major Medical coverage. Fiat-Allis will provide the Basic coverage.

(emphasis added). The January 1978 salaried plan contained a section entitled "certain dental benefits continue upon retirement." It provided: "If you retire under the Salaried Employees' Retirement Plan of Fiat-Allis, you and your eligible dependants *are covered* under a dental program." (emphasis added).

Courts consistently construe language that benefits "shall continue" or "will continue" not to create unalterable lifetime benefits. In *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 668 (6th Cir. 1998), for example, the plan documents contained this language: "if you retire and are eligible for a pension you *shall continue* to have the same health coverage." (emphasis added). The court found that "such language neither expressly guarantees lifetime benefits nor creates an ambiguity as to whether such benefits are vested." *Id.* Likewise, in *UAW, Local No. 1697 v. Skinner Engine Co.*, 188 F.3d 130, 135 (3rd Cir. 1999), the governing plan document stated that "[t]he Company will continue to provide major medical insurance coverage" and that life insurance "shall remain" at a given dollar amount. The court stated:

> A plain reading of the phrases "will continue" and "shall remain," certainly does not unambiguously indicate that benefits will continue ad infinitum as argued by the appellants. It cannot be said that the phrases clearly and expressly indicate vesting since there is simply no durational language to qualify these phrases.

*Id.* at 141. And most recently, in *UAW v. Rockford Powertrain, Inc.*, 350 F.3d 698, 701, 703 (7th Cir. 2003), the Seventh Circuit found that language to the effect that "health coverage *is continued* until . . . death" and that "if you die after retirement, health coverage *may be continued* for your spouse . . . unambiguously do not provide the plaintiffs with vested lifetime health insurance benefits." (emphasis added); *see also Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999) ("will be provided" unambiguously did not vest benefits).

In light of this case law, the January 1978 salaried plan's reference to "can continue" and "continue" is not clear and express vesting language. Indeed, "can continue" and "continue" is even weaker evidence of vesting than was the "shall continue" and "will continue" language in *Sengpiel* and *Skinner Engine Co.*, where the courts found no vesting had occurred. In addition, the plan's reference that survivor benefits "will continue until your spouse dies, remarries, or is covered by another employer's group plan" similarly did not vest retiree benefits. Indeed, the retiree plan in *Sengpiel* contained "until dies or remarries" language, but the court said that it did not vest benefits: "While this language may imply generally that benefits are to continue at the same rate provided to the retiree at his or her death, it falls short of expressing a clear intent to render such benefits forever unalterable." 156 F.3d at 668 (quotation marks omitted). Finally, the "are covered" language in the dental plan is even weaker than the "can continue" and

7

"continue" language in the salaried plan. Therefore, the language in the January 1978 "Group Health Plan For Active Salaried Employees" did not vest benefits.[2]

### The January 1978 "Health Benefits" Plan for Hourly Deerfield Employees and the January 1978 "Benefits For Retired Hourly Employees" Plan for Carol Stream Employees

The January 1978 hourly Deerfield and Carol Stream plans – which contain essentially identical relevant language – covered both medical and dental benefits, and they considered dental benefits to be a part of the medical benefits package. They provided: "Your Fiat-Allis Retired Medical Benefits *are provided* to help you meet the expense of illness, injury, and other similar emergencies within your family." (emphasis added). The plans also provided: "If a retired employee dies, the surviving spouse will have basic coverage continued for his or her lifetime at no cost." The "are provided" language is even weaker than the "can continue" and "continue" language in the 1978 salaried plan, and thus does not vest benefits. In addition, the surviving spouse "coverage" language does not render benefits unalterable for the same reason noted for the surviving spouse language in the 1978 salaried plan. "While this language may imply generally that benefits are to continue at the same rate provided to the retiree at his or her death, it falls short of expressing a clear intent to render such benefits forever unalterable."

---

[2] Plaintiffs argue that the language in this and other 1978 plans should be "read together" with the 1977 plans discussed above. However, each plan was a stand alone document that applied to different groups of former Fiatallis employees. Moreover, nothing in any of the plans (*i.e.*, incorporation by reference language) suggests that they were intended to be read as one, interrelated document. Therefore, I do not read these documents together, and I do not apply the language of the 1977 plans to those who retired under one of the 1978 plans. Regardless, reading the plans together would be of no help to plaintiffs because, as noted, the 1977 plans contained no "clear and express" vesting language that forever precluded any change to the plan.

8

*Sengpiel*, 156 F.3d at 668 (quotation marks omitted). Therefore, these plans also contained no "clear and express" vesting language.

The March/April 1985 "Benefit Fact Sheets"

These documents address the benefits afforded to salaried employees affected by the shutdown of the Fiatallis Springfield, Illinois plant.[3] Paragraph 2 of the Benefit Fact Sheet contains the only language that concerned retiree medical and dental benefits. It provided: "Salaried employees eligible for retirement will have the retired employee benefits in effect prior to March 1, 1985." The salaried retiree benefits in effect prior to March 1, 1985 were set forth in the January 1978 "Group Health Plan for Active Employees," which, as noted, covered salaried employees only. Because that plan did not contain clear and express language that forever prohibited changes to benefit levels, neither did the "Benefit Fact Sheets."

In summary, the most that plaintiffs can establish is that the plans on which they rely are silent or incomplete, as opposed to ambiguous, on the issue of vesting.[4] But this is insufficient

---

[3] Plaintiffs have indicated that for purposes of the Rule 12(c) motions, they are willing to have me disregard their allegations regarding these documents because defendants deny they are summary plan descriptions ("SPDs"). That is unnecessary, however, because I find that even if they are SPDs, they nonetheless do not contain "clear and express" vesting language.

[4] Plaintiffs argue that the absence of an explicit reservation of rights clause does not render a plan "clear and express" on the question of vesting. In other words, plaintiffs argue that the repeated "silence" of the plans on the issue of amendments supports a finding of vesting, or at least a finding of ambiguity as to vesting. Unfortunately for plaintiffs, existing caselaw refutes this novel argument. *See Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 938 (5th Cir. 1993) ("[w]e find no reason or authority to conclude that . . . silence in the [plan documents] is somehow tantamount to an affirmative contractual commitment and that [defendant's] earlier [plan documents] impliedly cede the right to late amend or discontinue coverage. While clear and unambiguous statements in the summary plan description are binding, the same is not true of silence."); *Sengpiel v. B.F. Goodrich Co.*, 970 F. Supp. 1322, 1337 (N.D. Ohio 1997), *aff'd*, 156

9

for purposes of avoiding adverse judgment on the pleadings, let alone for purposes of establishing a claim to vested benefits. *See Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 544 (7th Cir. 2000) (plaintiffs cannot avoid motion for judgment against them on the claim for vested benefits unless they demonstrate ambiguity). Plaintiffs thus cannot satisfy their burden of establishing vested medical and dental benefits for any of the sub-classes they purport to represent.

For the reasons above, Defendants' Motion for Judgment on the First Claim for Relief in the Amended Complaint is GRANTED and Plaintiffs' Motion for Partial Judgment on the Pleadings as to Plaintiffs' First Claim for Breach of an ERISA Contract is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 26 Jul 2004

---

F.3d 660 (6th Cir. 1998) ("the mere absence of a reservation of rights clause does not establish that plan benefits are vested. Plaintiffs bear a greater burden than merely showing the absence of a reservation of rights clause. . . . Because under ERISA welfare benefit plans normally do not vest, plaintiffs must establish an affirmative obligation by [defendant] to guarantee the benefits at issue for life.").

10